Common Pleas Court of Stark County.

STATE OF OHIO v. SARANUS A. LENGEL.

Decided December 13, 1927.

DIEHL, J.

This case comes into the Court of Common Pleas of Stark county by reason of a motion filed by the defendant on December 6, 1927, to be admitted to bail and have bail fixed, and by reason of a motion filed December 7, 1927, by the plaintiff, to have the motion of the defendant stricken from the files.

S. A. Lengel, the defendant, is confined in the jail of Stark county by reason of an indictment for first degree murder. The defendant was indicted by a grand jury of Stark county, trial was held and the defendant was convicted of first degree murder. Error proceedings were prosecuted by defendant to the Court of Appeals of this district, and as part of the decree by the Court of Appeals the defendant was granted a new trial.

The defendant, S. A. Lengel, had been sentenced to life imprisonment, and had served approximately six months of his sentence, and when the new trial was granted he was returned to the jail of Stark county by reason of the provision in the law of the state of Ohio, which provided for such procedure.

The defendant now stands again at the bar with the same indictment charging him with first degree murder.

Now if the defendant be entitled to bond, it is by reason of Article 1, Section 9 of the Constitution of the state of Ohio, and Section 13535 of the General Code of Ohio.

Article 1, Section 9, of the Constitution of Ohio reads as follows:

"All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great."

The state of Ohio claims that by reason of the holding of the Supreme Court of the state of Ohio in *Kendle* v. *Tarbell,* 24 O. S., 196, and *State, ex rel. McClintock,* v. *Diehl,* 115 O. S., 454, that the common pleas court does not have jurisdiction to hear and determine the question of bail.

In the case of *Kendle* v. *Tarbell,* Common Pleas Judge of Brown county, Kendle had been indicted for first degree murder, and before a plea served notice on the court, or rather had notice served on the court, that he desired to have a hearing on the question of his right to be admitted to bail and have bail fixed. The court refused to have a hearing on the ground that the court had no authority for such hearing. Later, on October 29, 1873, Kendle before pleading to the indictment, moved the common pleas court to be admitted to bail. This motion was overruled. On November 4, 1873, a plea of not guilty was made, and trial was set by the court for November 17, 1873. On November 4, 1873, the same day of plea, the motion for bail was renewed, and a motion for hearing of witnesses on the question was made, and the court refused to hear both motions, or rather refused to hear the connected motions.

After all this procedure Kendle brought a mandamus proceeding in the Supreme Court of the state of Ohio, asking the court by reason of the proceeding: (1) to compel defendant to hold such court and hear his application, (2) to grant a writ of mandamus to compel the court to hear the testimony offered on behalf of the relator in support of his motion.

It will be noticed that there were two questions presented to the Supreme Court by reason of the mandamus application. The Supreme Court of Ohio held—

First, that the law in question was not intended to apply to persons committed upon indictment. The first motion raised the question as to whether or not Section 48 of the Criminal Code applied to persons committed on indictment. Section 48 reads as follows:

"When any person shall have been committed to jail charged with the commission of any crime or offense, and wishes to be discharged from such imprisonment, the sheriff or jailor shall forthwith give to the probate judge, clerk, and prosecuting attorney of the proper county at least three days notice of the time of holding an examining court, whose duty it shall be to attend, according to such notice, at the court house; and said judge having examined the witnesses (the person charged included, if such person shall request an examination) shall discharge the accused, if he finds there is no probable cause for holding him to answer; otherwise he shall admit him to bail or remand to jail."

Section 53 of the Criminal Code reads as follows:

"The judge of the court of criminal jurisdiction of each county is invested with concurrent jurisdiction with the probate judge in all matters referred to in the above and certain other sections."

The court held that Sections 48 and 53 did not apply to persons who had been committed upon indictment. We believe that the holding of the court as to Sections 48 and 53 of the Criminal Code of the state of Ohio as it then stood was correct and is good law as applicable to the state of facts in the case of *Kendle* v. *Tarbell.* It will be noticed that this was a statutory provision. In this case the relator, Kendle, sought to compel the Common Pleas Court to hear and determine the question of bail, and the court having refused furnished no ground for interference on the part of the Supreme Court of the state of Ohio. But the court further said that it was not called upon by the facts of the case to enter into an examination of the circumstances under which it would be competent or proper, if at all, for the court, in which an indictment is pending for a capital offense, to hear testimony, otherwise than on the trial, for the purpose of showing that the offense was in fact bailable.

In the latter part of the paragraph above stated the court makes use of the term "for the purpose of showing that the offense was in fact bailable," which clearly indicates that there should be some way to determine whether or not an offense is bailable.

Second. The court then refers to the clause which

we have in our constitution, to-wit: "All persons shall be bailable by sufficient sureties except for capital offenses where the proof is evident or the presumption great," and then adds the expression "The indictment raises the presumption required by the constitution to justify the refusal of bail." This last expression very clearly implies that there must be something to justify the refusal of bail.

It is very clear from the statement of the case that there was no testimony of any kind introduced at the hearing. It is very clear also that there was no testimony of any kind introduced or presented to the court. It does not even show that the indictment was before the court by reason of the hearing, or refusal of the hearing. The court had a perfect right to take judicial notice of the indictment, and evidently did take judicial notice, and used it, to raise the presumption for the refusal of bail. The holding of the court very clearly shows that the court held in this case that Sections 48 and 53 of the Criminal Code did not apply where there was an indictment. And it also very clearly shows that by reason of Article 1, Section 9 of the Constitution there should be a hearing to determine the question of bail.

The State of Ohio claims that by reason of the recent holding of the Supreme Court a person under indictment for first degree murder cannot be admitted to bail and that the common pleas court has no jurisdiction to hear and determine the right of a person under indictment to be admitted to bail. * * * *

In order to arrive at a conclusion on the question as to whether or not a person charged with a capital offense may be admitted to bail under any circumstance it will be well to recite a little of the law of the bail question in Ohio.

In 1787 the Confederate Congress passed an act known as "An Ordinance for the Government of the Territory of the United States North West of the River Ohio," and out of which the state of Ohio was one of the states which was formed. Part of Article 2 of said Ordinance reads as follows:

"The inhabitants of the said territory shall always be entitled to the benefits of the writs of habeas corpus, and of the trial by jury; of a proportionate representation of

the people in the legislature, and of judicial proceedings according to the courts of the common law; all persons shall be bailable unless for capital offenses where the proof shall be evident or the presumption great; all fines shall be moderate, and no cruel or unusual punishment shall be inflicted; no man shall be deprived of his liberty or property, but by the judgment of his peers, or the law of the land."

In the first Constitution of the state of Ohio, in the Bill of Rights, Section 12, we find the following:

"That all persons shall be bailable by sufficient sureties, unless for capital offenses where the proof is evident or the presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless, when in case of rebellion or invasion, the public safety may require it."

Also in the same Constitution under Article 3, in Section 5, we find the following:

"The court of common pleas in each county shall have jurisdiction of all probate and testamentary matters, granting administration, the appointment of guardians, and such other cases as shall be prescribed by law."

In the second Constitution of the state of Ohio, the same provision for bail is made, and under that part of the Constitution under the subject "Judicial" Section 1 reads as follows:

"The judicial power of the state is vested in a supreme court, circuit courts, courts of common pleas, courts of probate, justices of the peace, and such other courts inferior to the supreme as the General Assembly may, from time to time establish."

And a part of Section 2 reads as follows:

"The supreme court shall, until otherwise provided by law, consist of five judges, a majority of whom competent to sit shall be necessary to form a quorum or to pronounce a decision, except as hereinafter provided. It shall have original jurisdiction in quo warranto, mandamus, habeas corpus and procedendo, and such appellate jurisdiction as may be provided by law."

And under Article 4, Section 4 reads as follows:

"The jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law."

And then we have Article 1 and Section 9 of our Constitution which has been referred to and needs not be repeated, and Article 4, Section 4, which reads as follows:

"The jurisdiction of the courts of common pleas, and of the judges thereof, shall be fixed by law."

And in the General Code of the state of Ohio, we have Section 13534, which reads as follows:

"When a person, charged with the commission of a bailable offense or a default of a recognizance to keep the peace, is confined in jail, whether committed by warrant under the hand of a judge or magistrate, or by the sheriff or coroner under a warrant upon indictment found or otherwise, a judge of the supreme court, or of the court of common pleas within his district, or the probate judge of his county, may admit such person to bail, by taking his recognizance in such sum and with such sureties as to such judge may seem proper, conditioned for his appearance before the proper court to answer the offense wherewith he is charged. For taking such bail the judge, by special warrant under his hand, may require the sheriff or jailor to bring such accused before him at the court house of the proper county at such time as in such warrant the judge may direct. Such judge shall be governed in the amount and quality of the bail required, by the court of common pleas in all cases in which such court has made an order or direction therein."

Now Section 13534 certainly gives jurisdiction to common pleas judges to fix bail for all bailable offenses.

Thus we see that 140 years ago the Confederate Congress provided that the inhabitants of the North West Territory, or any part thereof, should be entitled to the benefit of bail, and that all of the inhabitants charged with an offense should be bailable unless the same be a capital offense where the proof was evident and the presumption great; and thus bail has been provided for under substantially the same conditions in the first, second and third constitutions of the state of Ohio, and the legislature has provided a court which should have, and does have, jurisdiction on the question of bail, and the writ of prohibition was first mentioned in the last constitution.

Upon examination of Article 1, Section 9, of the Constitution the language appears to be plain and the meaning obvious, and we do not find anything that is ambigu-

ous, hidden or unintelligent, and by reason of the wording it becomes our duty to give the words the plain and ordinary meaning. Where the purpose and intent of the framers of the Constitution are clearly expressed they should be followed by the courts without regard to any change in public opinion, or questions of policy, or of the inconveniences resulting from following the constitution.

It is the province of the judiciary to construe laws and not to make them; and the meaning of the constitutional provision being plain it must stand and be recognized and obeyed as the supreme law of the land.

It is very plain that all persons are bailable in the state of Ohio when charged with an offense with the exception of capital offenses when the proof is evident and the presumption great. These words have both a popular and a technical meaning, but it so happens that the popular and the technical meaning are the same. I do not find that the Supreme Court of the state of Ohio has ever construed or interpreted the meaning of these words. But the Supreme Court of the state of Texas has interpreted them in the case of *McCoy* v. *The State,* 25 Texas, page 33, decided in 1860, in the first syllabus of the case, by using the following words:

"The terms 'proof is evident or the presumption great,' as used in the 9th section of the bill of rights, are intended to indicate the same degree of certainty, whether the evidence be direct or circumstantial. The design is to secure the right of bail in all cases, except in those in which the facts might show, with reasonable certainty, that the prisoner is guilty of a capital offense."

Aside from Ohio the view adopted by Alabama, Arkansas, Florida, Illinois, Indiana, Mississippi, South Carolina and Texas is that an indictment even in capital cases, is simply presumptive evidence of the guilt of the party charged, and that the courts should upon application hear proofs, and if the presumption be overcome admit to bail.

In other states the Supreme Court in cases too numerous to mention have given these words substantially the same popular and technical meaning.

The words being found in the Constitution of Ohio, and the Legislature having provided for the jurisdiction of the Common Pleas Court by reason of Section 13534, we can-

not help but conclude that the Common Pleas Court does have jurisdiction to hear and determine the question of bail.

In *State* v. *Summons,* 19 Ohio, page 139, the court, on the question of jurisdiction, said:

"Who is to decide whether proof be evident or presumption great? Most undoubtedly the same authority which prescribes the amount of bail and passes upon the sufficiency of the sureties, has jurisdiction."

By reason of the holding of the Supreme Court of the state of Ohio in *Kendle* v. *Tarbell,* 24 Ohio State, 196, by reason of the holding of the Supreme Court in the case of *State* v. *Summons,* 19 Ohio, 139, and by reason of the holding in numerous other states on the subject, and by reason of 140 years of precedent in the state of Ohio, the same having been exercised by the Common Pleas Courts, by the Common Pleas Court of Stark county, and once when the Honorable Robert Day, now one of the judges of the Supreme Court, admitted to bail a person charged with first degree murder, in the case of *Ohio* v. *Stonish,* and within the last year persons charged with first degree murder have been admitted to bail in various counties in the state of Ohio, and the questioning of the jurisdiction of the court has never been raised in those cases, we are compelled to come to the conclusion that the holding of the Supreme Court in its recent decision in *State, ex rel. McClintock,* v. *Diehl,* is not applicable to the case at bar and should not be followed.

Another reason the same is not applicable to the case at bar is shown by the reasoning in Judge Jones' dissenting opinion, which is as follows:

"The principle here involved is of far higher importance than the consequences that may result to Rudner from the issuance of this writ. The real question is, May no one who is indicted for a capital offense be admitted to bail? The majority hold he may not. If that holding is made to apply to all cases, after indictment found, we may hereafter be confronted with a doctrine which may plague the courts and shock the judicial conscience. A situation may readily be conceived where, after indictment, facts may develop which conclusively prove the innocence of the accused. In such event, are the hands of the judges tied, and must the accused still be kept in custody? I agree

that as stated by Judge White in the Kendle case, *supra*: 'The indictment raises the presumption required by the Constitution to justify the refusal to bail.'

"But surely this presumption can be removed by facts, especially those developed after the indictment, which may prove his innocence. In the Kendle case, *supra*, Judge White conceded the jurisdiction of the court, where, in his opinion, he said that a motion for bail might be entertained under certain circumstances. These three principles are well fixed in our Ohio jurisprudence: (1) The jurisdiction of the court of common pleas and its judges is fixed by statute. (2) Jurisdiction was conferred on Judge Diehl in the instant case by Section 13534, General Code. (3) Where jurisdiction is conferred, a writ of prohibition will not lie to control judicial action or discretion."

And another reason is that of Judge Mathias's dissenting opinion, which in part is as follows:

"I regret that I cannot concur in the judgment of the majority. I do not believe it is sustained by reason or weight of authority."

In the *Rudner case* the hearing was before trial and very little testimony was introduced. In this case we have the testimony which was introduced in the trial, and at this hearing, about which the Court of Appeals has said, "in the failure of the trial court to submit to the jury the legal principle whether he should have reasonably expected that such homicide might result from the unlawful act intended, we can not say that the verdict of first degree murder is sustained by evidence beyond the existence of a reasonable doubt; "and this means, in substance, that in the absence of a proper instruction on the question of conspiracy that the evidence does not show to a reasonable certainty that the defendant was guilty of first degree murder; the fact that all of the evidence was submitted in this case (or at least we have a right to assume that all of the evidence was submitted in this case) and a new trial was granted, is a circumstance which the court must consider in determining whether or not the defendants should be admitted to bail.

From all of the facts submitted it is the opinion of the court that all of the evidence submitted on this hearing, and the record of the former trial, and opinion of the

Court of Appeals, does not show with reasonable certainty that the defendant is guilty of the crime of first degree murder and therefore should be admitted to bail, not as a privilege, not by reason of discretion of the court, but by a right under our Constitution. Rights provided under a Constitution are not directory but mandatory, and it is the duty of all courts to follow mandatory rights so provided.

The policy of not admitting to bail was the old common law doctrine, and the preponderance of authority in this country is against the old common law doctrine. And it must be borne in mind by all of us that the legal penalty for crime is inflicted only upon conviction, and that the object of imprisonment before trial is safe keeping—not punishment. If the presence of the accused for trial could be otherwise assured, imprisonment would doubtless be entirely dispensed with. So anxious were the framers of the Constitutions, state and federal, to gaurd against abuses in this discretion that they prohibited the exaction of excessive bail; and as above stated, most states carried the provision into the Constitution "that all offenses are bailable except where a capital offense is charged, and capital offenses are bailable in most states except where the proof of guilt be evident and the presumption great.

Had the framers of the Constitution intended to provide that an indictment should be conclusive in capital offenses they would in all probability have said so. A simple declaration to this effect, if such was the desire, would avoid all doubt, embarrassment and difficulties, and a resort to the ancient writ of prohibition, an old English writ, older than our country, an outgrowth of the King's Bench and Chancery Practice in England, a source of some good, but the basis of much trouble, annoyance and injustice, would not need to be resorted to, and the jurisdiction of said writ extended beyond its proper application.

Motion of plaintiff to strike from the files overruled. Exceptions to plaintiff.

Motion of defendant to fix bail sustained. Exceptions to plaintiff.

Bond fixed at Twenty-five Thousand Dollars ($25,000.).